**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND, BALTIMORE DIVISION**

| | |
|---|---|
| **CHARLES MULLER** | * |
| 205 Misty View Ct. | * |
| Pasadena, MD 21122 | * |
| Anne Arundel County | * |
| | * |
| **And** | * |
| | * |
| **JUDY MULLER** | * |
| 205 Misty View Ct. | * |
| Pasadena, MD 21122 | * |
| Anne Arundel County | * |
| | * |
| Plaintiffs | * |
| | * |
| **v.** | * |
| | *   **CASE NO.:** |
| **CELLCO PARTNERSHIP** | * |
| **D/B/A VERIZON WIRELESS** | * |
| 180 Washington Valley Rd. | * |
| Bedminster, NJ 07921 | * |
| <u>Serve On</u>: The Corporation Trust Inc. | * |
| 351 West Camden St. | * |
| Baltimore, MD 21201 | * |
| | * |
| And | * |
| | * |
| **COLLECTO INC., D/B/A/** | * |
| **EOC CCA** | * |
| 700 Longwater Dr. | * |
| Norwell, MA 02061 | * |
| <u>Serve On</u>: The Corporation Trust Inc. | * |
| 351 West Camden St. | * |
| Baltimore, MD 21201 | * |
| | * |
| Defendants | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*\*\*\*\*\*\*\*\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**COMPLAINT**</u>

COMES NOW Plaintiffs, Charles Muller ("Muller") and Judy Muller ("Mrs.

Muller"), by their attorneys Mark J. Muffoletto, and the Law Offices of Mark J.

Muffoletto, L.L.C., and pursuant to  15 U.S.C. §1692c, 15 U.S.C. §1681s-2(b), MD

Code, Commercial Law, §14-202(3), and State law, hereby sue Cellco Partnership d/b/a

Verizon Wireless ("Defendant"), and Collecto Inc., d/b/a EOC CCA ("Co-Defendant"),

and in support thereof, avers the following:

STATEMENT OF JURISDICTION

1.    At all times mentioned herein, Plaintiff, Charles Muller, was and continues to

be a resident of the State of Maryland.

2.    At all times mentioned herein, Plaintiff, Judy Muller, was and continues to be

a resident of the State of Maryland.

3.    At all times mentioned herein, Defendant, Cellco Partnership d/b/a Verizon

Wireless, was and continues to be a business that is licensed in, and regularly

conducts business in, the State of Maryland.

4.    At all times mentioned herein, Co-Defendant, Collecto Inc., d/b/a EOC CCA

was and continues to be a business that is licensed in, and regularly conducts

business in, the State of Maryland.

5.    The jurisdiction of this Honorable Court is invoked pursuant to U.S.C.

§1692c, and 15 U.S.C. §1681s-2(b).

FACTS COMMON TO ALL COUNTS

6.    Plaintiffs, Charles Muller and wife Judy Muller were and continue to be

residents of the State of Maryland.

7.    Defendant, Cellco Partnership d/b/a Verizon Wireless, was and continues to

be a business that is licensed in, and regularly conducts business in, the State

of Maryland.

8.      On or about December 1, 2009, Defendant placed a claim for $506.37 with a debt collection agency named Miracle Financial, Inc. ("Miracle"), which Miracle contended Muller owed on an account with Verizon Wireless.

9.      Muller refuted the debt, demanded verification and advised Verizon Wireless through its agent to cease all collection activity and credit reporting because at no time in his life has Muller ever had any account with Verizon Wireless under the number provided.

10.     On or about December 3, 2009, Miracle mailed a letter to Muller stating that they were a collection agency attempting to collect a debt on behalf of the Defendant.

11.     Prior to the December 3, 2009 communication from Miracle, Muller had never received any communication directly from the Defendant with regard to a debt.

12.     On December 16, 2009, Muller directly contacted the Defendant by telephone and stated that he held no account with the Defendant, that his only relationship with Verizon involved his purchase of a modem card, which had been purchased from one of the Defendant's subsidiaries or agents having a different number and having been fully paid for, and that he disputed owing anything to the Defendant. In response, one of Defendant's agents verbally told him that fraud was suspected.

13.     During that call Muller was supposedly transferred to the Defendant's fraud department but after being disconnected and then on hold for almost an hour without answer the call was terminated.

14.     Nevertheless, Defendant still reported the debt to credit reporting agencies for eight months thereafter and continued its collection efforts.

15.     As a result of Defendant reporting the alleged debt, the Mullers were denied a $550,000.00 home loan, and were told by the lending institution that the reason for the denial was the alleged debt owed to Defendant and that they could do nothing until this account was removed.

16.     The Mullers needed to procure the loan so as to enable them to move into a neighborhood in a better school district.

17.     As a consequence of being denied financing, the Mullers were forced to remain in their existing neighborhood and send their child to private school which has, to date, cost them $2,750.00 in tuition.

**COUNT ONE:** VIOLATION OF FAIR DEBT REPORTING ACT,15 U.S.C. §1681s-2(b); BREACH OF DUTY TO PROVIDE ACCURATE INFORMATION.

18.     Paragraphs 1-17 are re-alleged and incorporated herein by reference.

19.     Under 15 U.S.C. §1681s-2(b), Defendant has a duty not to report to a credit agency information regarding a consumer debt, which information it has reason to believe may be inaccurate.

20.     In January of 2010, the Defendant reported the debt allegedly owed by Muller to various consumer reporting agencies causing a decline in Muller's credit score.

21.     The reporting of the alleged debt to these agencies came after Verizon Wireless received actual notice on December 16, 2009, of the dispute and the potential fraud responsible for said debt.

22.     Muller's reporting of fraud and dispute on December 16, 2009 put the
        Defendant on actual notice that its claim against Muller was not valid, as
        acknowledged by the representative of Defendant Verizon Wireless, Miracle
        Financial, who agreed and suggested that Muller was the victim of fraud, and
        then supposedly transferred Muller to Verizon Wirelesses' fraud department.

23.     Despite having this notice, Defendant falsely reported to credit agencies that
        Muller owes them a debt.

24.     Defendant's action of falsely reporting this information amounted to a willful
        non-compliance of 15 U.S.C. §1681s-2(b).

25.      By reporting this inaccurate information, the Defendant breached its duty of
        accurate reporting, which, in turn, caused Muller's credit score to suffer
        causing Muller and his wife to lose the opportunities outlined above.

26.     As a direct and proximate result of Muller's poor credit score, the Mullers
        were unable to procure financial assistance through lending agencies.

27.     As a direct consequence, the Mullers were declined financing for a home they
        were trying to purchase in a better school district prior to the registration
        period for that district, thereby forcing them to remain in their existing
        neighborhood and send their child to private school.

WHEREFORE, Plaintiffs request actual damages, pursuant to 15 U.S.C.
§1681n(1)(A), in the amount of $1,000.00, plus punitive damages, pursuant to 15 U.S.C.
§1681n(2),  in the amount of $1,000,000.00, plus reasonable attorney's fees, pursuant to
15 U.S.C. §1692n(3), plus Court costs, and any other relief as the nature of Plaintiffs'
cause may require.

**COUNT TWO:** VIOLATION OF FAIR DEBT REPORTING ACT,15 U.S.C. §1681s-2(b); BREACH OF DUTY TO PROVIDE ACCURATE INFORMATION.

28.     Paragraphs 1-27 are re-alleged and incorporated herein by reference.

29.     Under 15 U.S.C. §1681s-2(b), Defendant has a duty not to report to a credit agency information regarding a consumer debt, which information it has reason to believe is inaccurate.

30.     In February of 2010, the Defendant reported the debt allegedly owed by Muller to various consumer reporting agencies.

31.     The reporting of the alleged debt to these agencies came after Defendant received actual notice on December 16, 2009, of the potential fraud responsible for said debt.

32.     Muller's reporting of fraud on December 16, put the Defendant on actual notice that its claim against Muller may not be valid, as acknowledged by the Defendant suggesting that Muller was the victim of fraud, and then transferring Muller to the company's fraud department.

33.     Despite having this notice, Defendant falsely reported to credit agencies that Muller owes them a valid debt.

34.     Defendant's action of falsely reporting this information amounted to a willful non-compliance of 15 U.S.C. §1681s-2(b).

35.      By reporting this inaccurate information, the Defendant breached its duty of accurate reporting, which, in turn, caused Muller's credit score to suffer.

36.     As a direct and proximate result of Muller's poor credit score, the Mullers were unable to procure financial assistance through lending agencies.

37.     As a direct consequence, the Mullers were declined financing for a home they were trying to purchase in a better school district, thereby forcing them to remain in their existing neighborhood and send their child to private school.

WHEREFORE, Plaintiffs request actual damages, pursuant to 15 U.S.C. §1681n(1)(A), in the amount of $1,000.00, plus punitive damages, pursuant to 15 U.S.C. §1681n(2),  in the amount of $1,000,000.00, plus reasonable attorney's fees, pursuant to 15 U.S.C. §1692n(3), in the amount of  to be determined at the conclusion of this litigation, plus Court costs, and any other relief as the nature of Plaintiffs' cause may require.

**COUNT THREE:** VIOLATION OF FAIR DEBT REPORTING ACT,15 U.S.C. §1681s-2(b); BREACH OF DUTY TO PROVIDE ACCURATE INFORMATION.

38.     Paragraphs 1-37 are re-alleged and incorporated herein by reference.

39.     Under 15 U.S.C. §1681s-2(b), Defendant has a duty not to report to a credit agency information regarding a consumer debt, which information it has reason to believe may be inaccurate.

40.     In March of 2010, the Defendant reported the debt allegedly owed by Muller to various consumer reporting agencies.

41.     The reporting of the alleged debt to these agencies came after Defendant received actual notice on December 16, 2009, of the potential fraud responsible for said debt.

42.     Muller's reporting of fraud on December 16, put the Defendant on actual notice that its claim against Muller may not be valid, as acknowledged by the

Defendant suggesting that Muller was the victim of fraud, and then

transferring Muller to the company's fraud department.

43.     Despite having this notice, Defendant falsely reported to credit agencies that

Muller owes them a valid debt.

44.     Defendant's action of falsely reporting this information amounted to a willful

non-compliance of 15 U.S.C. §1681s-2(b).

45.      By reporting this inaccurate information, the Defendant breached its duty of

accurate reporting, which, in turn, caused Muller's credit score to suffer.

46.     As a direct and proximate result of Muller's poor credit score, the Mullers

were unable to procure financial assistance through lending agencies.

47.     As a direct consequence, the Mullers were declined financing for a home they

were trying to purchase in a better school district, thereby forcing them to

remain in their existing neighborhood and send their child to private school.

WHEREFORE, Plaintiffs request actual damages, pursuant to 15 U.S.C.

§1681n(1)(A), in the amount of $1,000.00, plus punitive damages, pursuant to 15 U.S.C.

§1681n(2),  in the amount of $1,000,000.00, plus reasonable attorney's fees, pursuant to

15 U.S.C. §1692n(3), in the amount of  to be determined at the conclusion of this

litigation, plus Court costs, and any other relief as the nature of Plaintiffs' cause may

require.


**COUNT FOUR:** VIOLATION OF FAIR DEBT REPORTING ACT,15 U.S.C. §1681s-
2(b); BREACH OF DUTY TO PROVIDE ACCURATE INFORMATION.
48.     Paragraphs 1-47 are re-alleged and incorporated herein by reference.

49.     Under 15 U.S.C. §1681s-2(b), Defendant has a duty not to report to a credit agency information regarding a consumer debt, which information it has reason to believe may be inaccurate.

50.     In April of 2010, the Defendant reported the debt allegedly owed by Muller to various consumer reporting agencies.

51.     The reporting of the alleged debt to these agencies came after Defendant received actual notice on December 16, 2009, of the potential fraud responsible for said debt.

52.     Muller's reporting of fraud on December 16, put the Defendant on actual notice that its claim against Muller may not be valid, as acknowledged by the Defendant suggesting that Muller was the victim of fraud, and then transferring Muller to the company's fraud department.

53.     Despite having this notice, Defendant falsely reported to credit agencies that Muller owes them a valid debt.

54.     Defendant's action of falsely reporting this information amounted to a willful non-compliance of 15 U.S.C. §1681s-2(b).

55.      By reporting this inaccurate information, the Defendant breached its duty of accurate reporting, which, in turn, caused Muller's credit score to suffer.

56.     As a direct and proximate result of Muller's poor credit score, the Mullers were unable to procure financial assistance through lending agencies.

57.     As a direct consequence, the Mullers were declined financing for a home they were trying to purchase in a better school district, thereby forcing them to remain in their existing neighborhood and send their child to private school.

WHEREFORE, Plaintiffs request actual damages, pursuant to 15 U.S.C. §1681n(1)(A), in the amount of $1,000.00, plus punitive damages, pursuant to 15 U.S.C. §1681n(2),  in the amount of $1,000,000.00, plus reasonable attorney's fees, pursuant to 15 U.S.C. §1692n(3), in the amount of  to be determined at the conclusion of this litigation, plus Court costs, and any other relief as the nature of Plaintiffs' cause may require.

**COUNT FIVE:** VIOLATION OF FAIR DEBT REPORTING ACT,15 U.S.C. §1681s-2(b); BREACH OF DUTY TO PROVIDE ACCURATE INFORMATION.

58.    Paragraphs 1-57 are re-alleged and incorporated herein by reference.

59.    Under 15 U.S.C. §1681s-2(b), Defendant has a duty not to report to a credit agency information regarding a consumer debt, which information it has reason to believe may be inaccurate.

60.    In May of 2010, the Defendant reported the debt allegedly owed by Muller to various consumer reporting agencies.

61.    The reporting of the alleged debt to these agencies came after Defendant received actual notice on December 16, 2009, of the potential fraud responsible for said debt.

62.    Muller's reporting of fraud on December 16, put the Defendant on actual notice that its claim against Muller may not be valid, as acknowledged by the Defendant suggesting that Muller was the victim of fraud, and then transferring Muller to the company's fraud department.

63.    Despite having this notice, Defendant falsely reported to credit agencies that Muller owes them a valid debt.

64.     Defendant's action of falsely reporting this information amounted to a willful non-compliance of 15 U.S.C. §1681s-2(b).

65.      By reporting this inaccurate information, the Defendant breached its duty of accurate reporting, which, in turn, caused Muller's credit score to suffer.

66.     As a direct and proximate result of Muller's poor credit score, the Mullers were unable to procure financial assistance through lending agencies.

67.     As a direct consequence, the Mullers were declined financing for a home they were trying to purchase in a better school district, thereby forcing them to remain in their existing neighborhood and send their child to private school.

WHEREFORE, Plaintiffs request actual damages, pursuant to 15 U.S.C. §1681n(1)(A), in the amount of $1,000.00, plus punitive damages, pursuant to 15 U.S.C. §1681n(2),  in the amount of $1,000,000.00, plus reasonable attorney's fees, pursuant to 15 U.S.C. §1692n(3), in the amount of  to be determined at the conclusion of this litigation, plus Court costs, and any other relief as the nature of Plaintiffs' cause may require.

**COUNT SIX:** VIOLATION OF FAIR DEBT REPORTING ACT,15 U.S.C. §1681s-2(b); BREACH OF DUTY TO PROVIDE ACCURATE INFORMATION.

68.     Paragraphs 1-67 are re-alleged and incorporated herein by reference.

69.     Under 15 U.S.C. §1681s-2(b), Defendant has a duty not to report to a credit agency information regarding a consumer debt, which information it has reason to believe may be inaccurate.

70.     In June of 2010, the Defendant reported the debt allegedly owed by Muller to various consumer reporting agencies.

71.   The reporting of the alleged debt to these agencies came after Defendant received actual notice on December 16, 2009, of the potential fraud responsible for said debt, which information came directly from Muller.

72.   Muller's reporting of fraud on December 16, put the Defendant on actual notice that its claim against Muller may not be valid, as acknowledged by the Defendant suggesting that Muller was the victim of fraud, and then transferring Muller to the company's fraud department.

73.   Defendant also had actual notice of the debt's potential invalidity by way of Miracle Financial, Inc., who also informed the Defendant in June 2010 of the dispute and possible invalidity of the debt, as evidenced by its communication to Muller's counsel on 6/11/2010 (See Fax by Miracle to Mr. Muffoletto, attached herein and incorporated by reference as Exhibit A.)

74.   Defendant also had additional notice of the debt's potential invalidity by way of Co-Defendant, EOS CCA, who returned the account to Defendant on 6/22/2010, after Muller communicated his dispute with Co-Defendant. (See Letter by EOS CCA to Mr. Muffoletto, attached herein and incorporated by reference as Exhibit B).

75.   Despite having this notice, Defendant falsely reported to credit agencies that Muller owes them a valid debt.

76.   Defendant's action of falsely reporting this information amounted to a willful non-compliance of 15 U.S.C. §1681s-2(b).

77.    By reporting this inaccurate information, the Defendant breached its duty of accurate reporting, which, in turn, caused Muller's credit score to suffer.

78.     As a direct and proximate result of Muller's poor credit score, the Mullers were unable to procure financial assistance through lending agencies.

79.     As a direct consequence, the Mullers were declined financing for a home they were trying to purchase in a better school district, thereby forcing them to remain in their existing neighborhood and send their child to private school.

WHEREFORE, Plaintiffs request actual damages, pursuant to 15 U.S.C. §1681n(1)(A), in the amount of $1,000.00, plus punitive damages, pursuant to 15 U.S.C. §1681n(2),  in the amount of $1,000,000.00, plus reasonable attorney's fees, pursuant to 15 U.S.C. §1692n(3), in the amount of  to be determined at the conclusion of this litigation, plus Court costs, and any other relief as the nature of Plaintiffs' cause may require.

**COUNT SEVEN:** VIOLATION OF FAIR DEBT REPORTING ACT,15 U.S.C. §1681s-2(b); BREACH OF DUTY TO PROVIDE ACCURATE INFORMATION.

80.     Paragraphs 1-79 are re-alleged and incorporated herein by reference.

81.     Under 15 U.S.C. §1681s-2(b), Defendant has a duty not to report to a credit agency information regarding a consumer debt, which information it has reason to believe may be inaccurate.

82.     In July of 2010, the Defendant reported the debt allegedly owed by Muller to various consumer reporting agencies.

83.     The reporting of the alleged debt to these agencies came after Defendant received actual notice on December 16, 2009, of the potential fraud responsible for said debt.

84.   Muller's reporting of fraud on December 16, put the Defendant on actual notice that its claim against Muller may not be valid, as acknowledged by the Defendant suggesting that Muller was the victim of fraud, and then transferring Muller to the company's fraud department.

85.   Defendant also had actual notice of the debt's potential invalidity by way of Miracle Financial, Inc., who also informed the Defendant in June 2010 of the dispute and possible invalidity of the debt, as evidenced by its communication to Muller's counsel on 6/11/2010 (See Exhibit A.)

86.   Defendant also had additional notice of the debt's potential invalidity by way of Co-Defendant, EOS CCA, who returned the account to Defendant on 6/22/2010, after Muller communicated his dispute with Co-Defendant. (See Exhibit B).

87.   Despite having this notice, Defendant falsely reported to credit agencies that Muller owes them a valid debt.

88.   Defendant's action of falsely reporting this information amounted to a willful non-compliance of 15 U.S.C. §1681s-2(b).

89.    By reporting this inaccurate information, the Defendant breached its duty of accurate reporting, which, in turn, caused Muller's credit score to suffer.

90.   As a direct and proximate result of Muller's poor credit score, the Mullers were unable to procure financial assistance through lending agencies.

91.   As a direct consequence, the Mullers were declined financing for a home they were trying to purchase in a better school district, thereby forcing them to remain in their existing neighborhood and send their child to private school.

WHEREFORE, Plaintiffs request actual damages, pursuant to 15 U.S.C.

§1681n(1)(A), in the amount of $1,000.00, plus punitive damages, pursuant to 15 U.S.C.

§1681n(2),  in the amount of $1,000,000.00, plus reasonable attorney's fees, pursuant to

15 U.S.C. §1692n(3), in the amount of  to be determined at the conclusion of this

litigation, plus Court costs, and any other relief as the nature of Plaintiffs' cause may

require.

**COUNT EIGHT:** VIOLATION OF FAIR DEBT REPORTING ACT,15 U.S.C. §1681s-
2(b); BREACH OF DUTY TO PROVIDE ACCURATE INFORMATION.

92.     Paragraphs 1-91 are re-alleged and incorporated herein by reference.

93.     Under 15 U.S.C. §1681s-2(b), Defendant has a duty not to report to a credit

        agency information regarding a consumer debt, which information it has

        reason to believe may be inaccurate.

94.     In August of 2010, the Defendant reported the debt allegedly owed by Muller

        to various consumer reporting agencies (See Muller's Recent Credit Report

        attached herein and incorporated by reference as Exhibit C).

95.     The reporting of the alleged debt to these agencies came after Defendant

        received actual notice on December 16, 2009, of the potential fraud

        responsible for said debt.

96.     Muller's reporting of fraud on December 16, put the Defendant on actual

        notice that its claim against Muller may not be valid, as acknowledged by the

        Defendant suggesting that Muller was the victim of fraud, and then

        transferring Muller to the company's fraud department.

97.     Defendant also had actual notice of the debt's potential invalidity by way of Miracle Financial, Inc., who also informed the Defendant in June 2010 of the dispute and possible invalidity of the debt, as evidenced by its communication to Muller's counsel on 6/11/2010 (See Exhibit A.)

98.     Defendant also had additional notice of the debt's potential invalidity by way of Co-Defendant, EOS CCA, who returned the account to Defendant on 6/22/2010, after Muller communicated his dispute with Co-Defendant. (See Exhibit B).

99.     Despite having this notice, Defendant falsely reported to credit agencies that Muller owes them a valid debt.

100.     By reporting this inaccurate information, the Defendant breached its duty of accurate reporting, which, in turn, caused Muller's credit score to suffer.

101.     As a direct and proximate result of Muller's poor credit score, the Mullers were unable to procure financial assistance through lending agencies.

102.     As a direct consequence, the Mullers were declined financing for a home they were trying to purchase in a better school district, thereby forcing them to remain in their existing neighborhood and send their child to private school.


WHEREFORE, Plaintiffs request actual damages, pursuant to 15 U.S.C. §1681n(1)(A), in the amount of $1,000.00, plus punitive damages, pursuant to 15 U.S.C. §1681n(2),  in the amount of $1,000,000.00, plus reasonable attorney's fees, pursuant to 15 U.S.C. §1692n(3), in the amount of  to be determined at the conclusion of this

litigation, plus Court costs, and any other relief as the nature of Plaintiffs' cause may require.

**COUNT NINE:** VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT,15 U.S.C. §1692c; COMMUNICATION IN CONNECTION WITH DEBT COLLECTION.

103.    Paragraphs 1-102 are re-alleged and incorporated herein by reference.

104.    On June 9, 2010, subsequent to Muller directly notifying the Defendant about the fraud and dispute associated with the alleged debt, the Defendant procured Co-Defendant, EOS CCA, a debt collection agency, for the purposes of collecting said debt without notifying the agency that the debt was disputed and possibly fraudulent.

105.    On June 10, 2010, Co-Defendant contacted Muller by phone and made demand on the alleged debt owed to Defendant via automated machine.

106.    Muller immediately called Co-Defendant back and made a demand to cease and desist all communications, requesting that Co-Defendant contact Muller's attorney. (See Muller's AT&T Bill for incoming call on 6/10 at 8:12 p.m. from 877-208-4176, and outgoing call at 8:14 p.m., attached herein and incorporated by reference as Exhibit D).

107.    In response to Muller's request to cease communications with him and to speak with Muller's attorney instead, Co-Defendant responded that it would not speak with Muller's attorney.

108.    On June 15, 2010, five days after Muller asked Co-Defendant to cease and desist, Co-Defendant mailed a demand letter to Muller's home. (See June 15

Letter from EOC CCA attached herein and incorporated by reference as Exhibit E).

109.    Because Co-Defendant ignored Muller's advised to cease all communications directly with him and to speak with Muller's attorney instead, Co-Defendant violated 15 U.S.C. §1692c(2).

110.    As a result of this violation, Muller's right to be left alone was infringed.

WHEREFORE, Plaintiffs respectfully request actual damages in the amount of $552,750.00, plus additional damages in the amount of $1,000.00, as permitted under 15 U.S.C. §1692k(a)(2)(A), plus reasonable attorney's in the amount of to be determined at the conclusion of this litigation, as allowed by15 U.S.C. §1692k(a)(3), plus Court costs, and any other relief as the nature of Plaintiffs' cause may require.


**COUNT TEN:** VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT; §14-202(3); WRONGLY AFFECTING THE PLAINTIFFS' CREDIT WORTHINESS

111.    Paragraphs 1-110 are re-alleged and incorporated herein by reference.

112.    While collecting, or attempting to collect, on the alleged debt, Defendant had a duty, pursuant to MD Code, Commercial Article, §14-202(3), to refrain from disclosing information which affects Muller's reputation for credit-worthiness, if the Defendant has either actual knowledge that the information is false, or acts with a reckless disregard for the falsity of the information. Akalawadi v. Risk Management, 336 F.Supp.2d 492 (2004).

113.    In January of 2010, the Defendant reported the debt allegedly owed by Muller to various consumer reporting agencies.

114.   The reporting of the alleged debt to these agencies came after Defendant received actual notice on December 16, 2009, of the potential fraud responsible for said debt.

115.   Muller's reporting of fraud on December 16, put the Defendant on actual notice that its claim against Muller may not be valid, as acknowledged by the Defendant suggesting that Muller was the victim of fraud, and then transferring Muller to the company's fraud department.

116.   Despite having this notice, Defendant nevertheless reported to credit agencies that Muller owes them a valid debt.

117.    By reporting this inaccurate information, the Defendant showed a reckless disregard for the truth behind the alleged debt, which, in turn, caused Muller's credit score to suffer.

118.   As a direct and proximate result of Muller's poor credit score, the Mullers were unable to procure financial assistance through lending agencies.

119.   As a direct consequence, the Mullers were declined financing for a home they were trying to purchase in a better school district, thereby forcing them to remain in their existing neighborhood and send their child to private school.


WHEREFORE, Plaintiffs respectfully request compensatory damages in the amount of $552,750.00, and any other relief as the nature of their cause may require.


**COUNT ELEVEN:** VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT; §14-202(3); WRONGLY AFFECTING THE PLAINTIFFS' CREDIT WORTHINESS

120.   Paragraphs 1-119 are re-alleged and incorporated herein by reference.

121.    While collecting, or attempting to collect, on the alleged debt, Defendant had

a duty, pursuant to MD Code, Commercial Article, §14-202(3), to refrain

from disclosing information which affects Muller's reputation for credit-

worthiness, if the Defendant has either actual knowledge that the information

is false, or acts with a reckless disregard for the falsity of the information.

Akalawadi v. Risk Management, 336 F.Supp.2d 492 (2004).

122.    In February of 2010, the Defendant reported the debt allegedly owed by

Muller to various consumer reporting agencies.

123.    The reporting of the alleged debt to these agencies came after Defendant

received actual notice on December 16, 2009, of the potential fraud

responsible for said debt.

124.    Muller's reporting of fraud on December 16, put the Defendant on actual

notice that its claim against Muller may not be valid, as acknowledged by the

Defendant suggesting that Muller was the victim of fraud, and then

transferring Muller to the company's fraud department.

125.    Despite having this notice, Defendant nevertheless reported to credit agencies

that Muller owes them a valid debt.

126.     By reporting this inaccurate information, the Defendant showed a reckless

disregard for the truth behind the alleged debt, which, in turn, caused Muller's

credit score to suffer.

127.    As a direct and proximate result of Muller's poor credit score, the Mullers

were unable to procure financial assistance through lending agencies.

128.    As a direct consequence, the Mullers were declined financing for a home they

were trying to purchase in a better school district, thereby forcing them to

remain in their existing neighborhood and send their child to private school.


WHEREFORE, Plaintiffs respectfully request compensatory damages in the amount

of $552,750.00, and any other relief as the nature of their cause may require.

### **COUNT TWELVE:** VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT; §14-202(3); WRONGLY AFFECTING THE PLAINTIFFS' CREDIT WORTHINESS

129.    Paragraphs 1-128 are re-alleged and incorporated herein by reference.

130.    While collecting, or attempting to collect, on the alleged debt, Defendant had

a duty, pursuant to MD Code, Commercial Article, §14-202(3), to refrain

from disclosing information which affects Muller's reputation for credit-

worthiness, if the Defendant has either actual knowledge that the information

is false, or acts with a reckless disregard for the falsity of the information.

Akalawadi v. Risk Management, 336 F.Supp.2d 492 (2004).

131.    In March of 2010, the Defendant reported the debt allegedly owed by Muller

to various consumer reporting agencies.

132.    The reporting of the alleged debt to these agencies came after Defendant

received actual notice on December 16, 2009, of the potential fraud

responsible for said debt.

133.    Muller's reporting of fraud on December 16, put the Defendant on actual

notice that its claim against Muller may not be valid, as acknowledged by the

Defendant suggesting that Muller was the victim of fraud, and then

transferring Muller to the company's fraud department.

134.    Despite having this notice, Defendant nevertheless reported to credit agencies

that Muller owes them a valid debt.

135.     By reporting this inaccurate information, the Defendant showed a reckless

disregard for the truth behind the alleged debt, which, in turn, caused Muller's

credit score to suffer.

136.    As a direct and proximate result of Muller's poor credit score, the Mullers

were unable to procure financial assistance through lending agencies.

137.    As a direct consequence, the Mullers were declined financing for a home they

were trying to purchase in a better school district, thereby forcing them to

remain in their existing neighborhood and send their child to private school.


WHEREFORE, Plaintiffs respectfully request compensatory damages in the amount

of $552,750.00 and any other relief as the nature of their cause may require.

**COUNT THIRTEEN:** VIOLATION OF THE MARYLAND CONSUMER DEBT
COLLECTION ACT; §14-202(3); WRONGLY AFFECTING THE PLAINTIFFS'
CREDIT WORTHINESS

138.    Paragraphs 1-137 are re-alleged and incorporated herein by reference.

139.    While collecting, or attempting to collect, on the alleged debt, Defendant had

a duty, pursuant to MD Code, Commercial Article, §14-202(3), to refrain

from disclosing information which affects Muller's reputation for credit-

worthiness, if the Defendant has either actual knowledge that the information

is false, or acts with a reckless disregard for the falsity of the information.

Akalawadi v. Risk Management, 336 F.Supp.2d 492 (2004).

140.    In April of 2010, the Defendant reported the debt allegedly owed by Muller to various consumer reporting agencies.

141.    The reporting of the alleged debt to these agencies came after Defendant received actual notice on December 16, 2009, of the potential fraud responsible for said debt.

142.    Muller's reporting of fraud on December 16, put the Defendant on actual notice that its claim against Muller may not be valid, as acknowledged by the Defendant suggesting that Muller was the victim of fraud, and then transferring Muller to the company's fraud department.

143.    Despite having this notice, Defendant nevertheless reported to credit agencies that Muller owes them a valid debt.

144.     By reporting this inaccurate information, the Defendant showed a reckless disregard for the truth behind the alleged debt, which, in turn, caused Muller's credit score to suffer.

145.    As a direct and proximate result of Muller's poor credit score, the Mullers were unable to procure financial assistance through lending agencies.

146.    As a direct consequence, the Mullers were declined financing for a home they were trying to purchase in a better school district, thereby forcing them to remain in their existing neighborhood and send their child to private school.


WHEREFORE, Plaintiffs respectfully request compensatory damages in the amount of $552,750.00, and any other relief as the nature of their cause may require.

**COUNT FOURTEEN:** VIOLATION OF THE MARYLAND CONSUMER DEBT
COLLECTION ACT; §14-202(3); WRONGLY AFFECTING THE PLAINTIFFS'
CREDIT WORTHINESS

147.    Paragraphs 1-146 are re-alleged and incorporated herein by reference.

148.    While collecting, or attempting to collect, on the alleged debt, Defendant had

a duty, pursuant to MD Code, Commercial Article, §14-202(3), to refrain

from disclosing information which affects Muller's reputation for credit-

worthiness, if the Defendant has either actual knowledge that the information

is false, or acts with a reckless disregard for the falsity of the information.

Akalawadi v. Risk Management, 336 F.Supp.2d 492 (2004).

149.    In May of 2010, the Defendant reported the debt allegedly owed by Muller to

various consumer reporting agencies.

150.    The reporting of the alleged debt to these agencies came after Defendant

received actual notice on December 16, 2009, of the potential fraud

responsible for said debt.

151.    Muller's reporting of fraud on December 16, put the Defendant on actual

notice that its claim against Muller may not be valid, as acknowledged by the

Defendant suggesting that Muller was the victim of fraud, and then

transferring Muller to the company's fraud department.

152.    Despite having this notice, Defendant nevertheless reported to credit agencies

that Muller owes them a valid debt.

153.     By reporting this inaccurate information, the Defendant showed a reckless

disregard for the truth behind the alleged debt, which, in turn, caused Muller's

credit score to suffer.

154.    As a direct and proximate result of Muller's poor credit score, the Mullers were unable to procure financial assistance through lending agencies.

155.    As a direct consequence, the Mullers were declined financing for a home they were trying to purchase in a better school district, thereby forcing them to remain in their existing neighborhood and send their child to private school.

WHEREFORE, Plaintiffs respectfully request compensatory damages in the amount of $552,750.00, and any other relief as the nature of their cause may require.

**COUNT FIFTEEN:** VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT; §14-202(3); WRONGLY AFFECTING THE PLAINTIFFS' CREDIT WORTHINESS

156.    Paragraphs 1-155 are re-alleged and incorporated herein by reference.

157.    While collecting, or attempting to collect, on the alleged debt, Defendant had a duty, pursuant to MD Code, Commercial Article, §14-202(3), to refrain from disclosing information which affects Muller's reputation for credit-worthiness, if the Defendant has either actual knowledge that the information is false, or acts with a reckless disregard for the falsity of the information. Akalawadi v. Risk Management, 336 F.Supp.2d 492 (2004).

158.    In June of 2010, the Defendant reported the debt allegedly owed by Muller to various consumer reporting agencies.

159.    The reporting of the alleged debt to these agencies came after Defendant received actual notice on December 16, 2009, of the potential fraud responsible for said debt.

160. Muller's reporting of fraud on December 16, put the Defendant on actual notice that its claim against Muller may not be valid, as acknowledged by the Defendant suggesting that Muller was the victim of fraud, and then transferring Muller to the company's fraud department.

161. Defendant also had actual notice of the debt's potential invalidity by way of Miracle Financial, Inc., who also informed the Defendant in June 2010 of the dispute and possible invalidity of the debt, as evidenced by its communication to Muller's counsel on 6/11/2010 (See Exhibit A.)

162. Defendant also had additional notice of the debt's potential invalidity by way of Co-Defendant, EOS CCA, who returned the account to Defendant on 6/22/2010, after Muller communicated his dispute with Co-Defendant. (See Exhibit B).

163. Despite having this notice, Defendant nevertheless reported to credit agencies that Muller owes them a valid debt.

164. By reporting this inaccurate information, the Defendant showed a reckless disregard for the truth behind the alleged debt, which, in turn, caused Muller's credit score to suffer.

165. As a direct and proximate result of Muller's poor credit score, the Mullers were unable to procure financial assistance through lending agencies.

166. As a direct consequence, the Mullers were declined financing for a home they were trying to purchase in a better school district, thereby forcing them to remain in their existing neighborhood and send their child to private school.

WHEREFORE, Plaintiffs respectfully request compensatory damages in the amount of $552,750.00, and any other relief as the nature of their cause may require.

**COUNT SIXTEEN:** VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT; §14-202(3); WRONGLY AFFECTING THE PLAINTIFFS' CREDIT WORTHINESS

167.    Paragraphs 1-166 are re-alleged and incorporated herein by reference.

168.    While collecting, or attempting to collect, on the alleged debt, Defendant had a duty, pursuant to MD Code, Commercial Article, §14-202(3), to refrain from disclosing information which affects Muller's reputation for credit-worthiness, if the Defendant has either actual knowledge that the information is false, or acts with a reckless disregard for the falsity of the information. Akalawadi v. Risk Management, 336 F.Supp.2d 492 (2004).

169.    In July of 2010, the Defendant reported the debt allegedly owed by Muller to various consumer reporting agencies.

170.    The reporting of the alleged debt to these agencies came after Defendant received actual notice on December 16, 2009, of the potential fraud responsible for said debt.

171.    Muller's reporting of fraud on December 16, put the Defendant on actual notice that its claim against Muller may not be valid, as acknowledged by the Defendant suggesting that Muller was the victim of fraud, and then transferring Muller to the company's fraud department.

172.    Defendant also had actual notice of the debt's potential invalidity by way of Miracle Financial, Inc., who also informed the Defendant in June 2010 of the

dispute and possible invalidity of the debt, as evidenced by its communication to Muller's counsel on 6/11/2010 (See Exhibit A.)

173.    Defendant also had additional notice of the debt's potential invalidity by way of Co-Defendant, EOS CCA, who returned the account to Defendant on 6/22/2010, after Muller communicated his dispute with Co-Defendant. (See Exhibit B).

174.    Despite having this notice, Defendant nevertheless reported to credit agencies that Muller owes them a valid debt.

175.     By reporting this inaccurate information, the Defendant showed a reckless disregard for the truth behind the alleged debt, which, in turn, caused Muller's credit score to suffer.

176.    As a direct and proximate result of Muller's poor credit score, the Mullers were unable to procure financial assistance through lending agencies.

177.    As a direct consequence, the Mullers were declined financing for a home they were trying to purchase in a better school district, thereby forcing them to remain in their existing neighborhood and send their child to private school.

WHEREFORE, Plaintiffs respectfully request compensatory damages in the amount of $552,750.00, and any other relief as the nature of their cause may require.

**COUNT SEVENTEEN:** VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT; §14-202(3); WRONGLY AFFECTING THE PLAINTIFFS' CREDIT WORTHINESS

178.    Paragraphs 1-177 are re-alleged and incorporated herein by reference.

179.    While collecting, or attempting to collect, on the alleged debt, Defendant had a duty, pursuant to MD Code, Commercial Article, §14-202(3), to refrain

from disclosing information which affects Muller's reputation for credit-worthiness, if the Defendant has either actual knowledge that the information is false, or acts with a reckless disregard for the falsity of the information. Akalawadi v. Risk Management, 336 F.Supp.2d 492 (2004).

180.    In August of 2010, the Defendant reported the debt allegedly owed by Muller to various consumer reporting agencies (See Exhibit C).

181.    The reporting of the alleged debt to these agencies came after Defendant received actual notice on December 16, 2009, of the potential fraud responsible for said debt.

182.    Muller's reporting of fraud on December 16, put the Defendant on actual notice that its claim against Muller may not be valid, as acknowledged by the Defendant suggesting that Muller was the victim of fraud, and then transferring Muller to the company's fraud department.

183.    Defendant also had actual notice of the debt's potential invalidity by way of Miracle Financial, Inc., who also informed the Defendant in June 2010 of the dispute and possible invalidity of the debt, as evidenced by its communication to Muller's counsel on 6/11/2010 (See Exhibit A.)

184.    Defendant also had additional notice of the debt's potential invalidity by way of Co-Defendant, EOS CCA, who returned the account to Defendant on 6/22/2010, after Muller communicated his dispute with Co-Defendant. (See Exhibit B).

185.    Despite having this notice, Defendant nevertheless reported to credit agencies that Muller owes them a valid debt.

186.    By reporting this inaccurate information, the Defendant showed a reckless disregard for the truth behind the alleged debt, which, in turn, caused Muller's credit score to suffer.

187.    As a direct and proximate result of Muller's poor credit score, the Mullers were unable to procure financial assistance through lending agencies.

188.    As a direct consequence, the Mullers were declined financing for a home they were trying to purchase in a better school district, thereby forcing them to remain in their existing neighborhood and send their child to private school.


WHEREFORE, Plaintiffs respectfully request compensatory damages in the amount of $552,750.00, and any other relief as the nature of their cause may require.

### **COUNT EIGHTEEN:** TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONSHIP

189.    Paragraphs 1-188 are re-alleged and incorporated herein by reference.

190.    On or about May 3, 2010, Muller and Mrs. Muller began actively seeking to finance their home for both business and personal reasons, one such personal reason being to move their school-aged child into a better neighborhood and school district.

191.    Due to the fact that the Defendant had been reporting the fraudulent debt as a valid owing debt to various credit agencies between January 2010 and August 2010, Muller's credit score suffered.

192.    Muller's reporting of fraud on December 16, put the Defendant on actual notice that its claim against Muller may not be valid, as acknowledged by the

Defendant suggesting that Muller was the victim of fraud, and then transferring Muller to the company's fraud department.

193.  On June 9, 2010, Muller's counsel requested that Miracle Financial, Inc, remove the debt from Muller's credit report, as Miracle was acting as Defendant's agent for the purposes of collecting money from Muller. See Letter to Miracle, attached herein and incorporated by reference as Exhibit F.

194.  On June 11, 2010, Miracle Financial, Inc. stated to Muller's counsel that they had passed along Muller's request to the Defendant, and promised to cease further communication with Muller. (See Exhibit A.)

195.  On June 15, 2010, Muller's counsel requested that Co-Defendant remove the debt from Muller's credit report, as Co-Defendant was acting as Defendant's agent for the purposes of collecting money from Muller. See Letter to EOS CCA attached herein and incorporated by reference as Exhibit G.

196.  On June 22, 2010, in response to Muller's June 15 communication, Co-Defendant, EOS CCA, stated to Muller's counsel that it returned the account to the Defendant, stated that it never reported Muller to any credit agencies, and promised to cease further communications with Muller (See Exhibit B).

197.  Nevertheless, the Defendant continued to falsely report the debt to credit agencies and, as a result, Muller was denied home financing from at least two different lending agencies.

198.  In reporting said debt to credit agencies, Defendant was aware that economic advantages and relationships that are based on Muller's credit worthiness would be ruined as a result of the reporting.

199.   The lending agencies that denied the Mullers financing, specifically stated that the denial was based on the outstanding debt that Defendant had reported.

WHEREFORE, Plaintiffs respectfully request compensatory damages in the amount of $552,750.00, and any other relief as the nature of their cause may require.

## COUNT NINETEEN: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

200.   Paragraphs 1-199 are re-alleged and incorporated herein by reference.

201.   On June 9, 2010, Muller's counsel requested Miracle Financial, Inc, who was retained by Defendant for the purposes of collecting money from Muller, to cease its demands on Muller and have the fraudulent debt removed from Muller's credit report. (See Exhibit F).

202.   On June 10, 2010, Co-Defendant, also retained by Defendant to collect the alleged debt, contacted Muller by phone and demanded payment on the alleged debt.

203.   In response to Co-Defendant's June 11th demand, Muller communicated that he had an attorney, and requested that all communications be directed to his attorney.

204.   In response to Muller's request to contact Muller's attorney, Co-Defendant responded that they would not speak with Muller's attorney and would only speak with Muller directly.

205.   Five days later on June 15, 2010, Co-Defendant, again mailed a letter to Muller's home, demanding payment on the debt (See Exhibit E).

206.   During this time, Defendant continued to falsely report the debt to credit agencies.

207.   Defendant's continued conduct of persistently demanding money from the debtor through its agents, combined with its failure to remove the debt from Muller's credit report and continuing to report the debt to various credit agencies for eight consecutive months after acknowledging said debt was potentially fraudulent, amounted to extreme and outrageous conduct.

208.   As a result of Defendant's conduct, Muller's credit was ruined thereby preventing Muller and Ms. Muller from obtaining financing for a home. A main reason that financing was sought by the Mullers was so that they could move their son into a better school district.

209.   The resulting denial of home financing by several lending institutions caused both Muller and Ms. Muller severe emotional distress.

210.   It is foreseeable that reporting negative information about an individual's credit to a credit reporting agency can cause that individual to be denied financial assistance and that refusing to speak to counsel and telling the Plaintiff that they would only deal with him was intentional and used to inflict emotional distress.

211.   The severe emotional distress experienced by Muller manifested itself into muscle tension around his neck that would cause his neck to stiffen and hurt.

212.   The severe emotional distress experienced by Ms. Muller manifested itself as elevated blood pressure which would cause her heart to race.

213.    The physical manifestations of said emotional distress would emerge anytime

Muller and Ms. Muller were forced to address the situation with Defendant.

WHEREFORE, for the reasons stated above, Plaintiffs requests damages in the

amount of $1,000,000.00, and any other relief as the nature of their cause may require.

Respectfully Submitted,

/s/

_____

Mark J. Muffoletto, Esquire  #15106
Law Offices of Mark J. Muffoletto, L.L.C.
3201 Rogers Ave., Suite 102
Ellicott City, MD 21043
*Attorney for Plaintiffs*

<u>Verification</u>

I Charles Muller, IV, being over the age of 18 and competent , do hereby certify
under the penalties of perjury that I have reviewed the forgoing Complaint and its
attachments and state that all averments made therein are true and accurate to the best of
my knowledge and belief.

_____   11/8/10

Charles Muller. IV